O'Neill v. Lehigh Coal & Navigation Co., Appellant.

Argued December 12, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFEID and PARKER, JJ.

426

*George H. Kaercher,* and with him *F. S. Riordan* and *William Jay Turner,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY CUNNINGHAM, J., March 3, 1933:

Shortly after eight o'clock on the morning of February 6, 1931, James O'Neill, employed as a carpenter by Lehigh Coal and Navigation Company, died of angina pectoris in the office of Dr. P. C. Board, New Philadelphia, Pa.

Alleging that his death was caused by an accident in the course of his employment, his widow, Genevieve O'Neill, claimed compensation in behalf of herself and two minor children. The referee made an award which the board affirmed; the court below dismissed the employer's exceptions and we now have its appeal from the judgment entered on the award.

The description of the accident given by claimant in her petition reads: "Exertion in heavy lift caused death;" the finding of the board was; "Death was caused by exertion, which was the exaggerating and exciting cause of angina pectoris." The defense interposed by the employer was that the death of this employe resulted "from purely natural causes and there was no accident or excessive strain of any kind."

In considering and disposing of this appeal, we are thus met at the very threshold with this question of

law: Is there any legally competent evidence upon this record from which the compensation authorities could reasonably conclude that claimant's husband met with an "accident," within the meaning of our compensation law. That is the controlling question; claimant must first show that decedent suffered some "accident;" only after she has done that, is she in a position to ask the compensation authorities to consider its alleged harmful results: Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 205. We are not concerned about the opinions of medical experts, relative to causal connections, in this, or in any, compensation case until we have first found direct or circumstantial evidence of an accident.

These facts appear from the evidence: Decedent, forty-two years of age, had been in the regular employ of defendant as a carpenter. On February 5, 1931, he had been engaged along with a fellow-workman, William A. Fudge, in constructing a platform in a breaker, located at a point from fifty to sixty feet above the ground and reached by a flight of steps. When he quit work that evening, he left his tool box, containing a hatchet, chisel, bar, level, etc., on the platform. He left his home at 6:15 the next morning, apparently in his usual health, and arrived at the colliery about seven. The work assigned him that morning was the lowering of a trough, constructed on the ground and placed about two hundred feet from a building referred to as the "shanty." Fudge and another workman, Lilleck, noticed decedent when he arrived at the shanty and both saw him walking, empty-handed, up the steps to the platform, where he had left his tool box the previous evening, and coming down with the box. Fudge spoke to him at the shanty before he went for his tools, but neither he nor Lilleck observed anything unusual in his appearance. Decedent began his work upon the trough, which was to be lowered four feet; after spending about fifteen

minutes in taking out "a strip from under the trough," he left some of his tools on the ground, walked toward Fudge and Lilleck, "said he was sick," and asked to be taken home. Fudge, who was also a first-aid man, took him to the shanty, administered a restorative, and sent him in an automobile, with Lilleck, to Dr. Board's office. They arrived there about eight o'clock; decedent told the physician he had indigestion; his death occurred within ten minutes.

It is quite apparent from Dr. Board's description of the characteristics, and varied causes, of angina pectoris that any workman, afflicted with the predisposing heart conditions, may suffer a fatal attack, brought on by natural causes, while engaged in the performance, under entirely normal conditions, of his ordinary duties, and without having subjected himself to any over exertion or unusual strain of any kind.

An excerpt from his testimony reads: "Q. What are the causes that produce angina pectoris? A. Common cause, arteriosclerosis with associated symptoms, high blood pressure. ...... It is an obstruction of the coronary arteries of the heart. Q. Caused by what? A. Embolism, caused by constriction. Q. By embolism you mean some foreign substance getting into the blood stream? A. Yes, sir. Q. What could that come from? A. Arteriosclerosis. ...... Foreign substances getting into the blood stream which causes embolism and produces angina pectoris. Q. In arteriosclerosis it is quite common to have calcareous deposits of the larger vessels of the heart which become loose and lodge in the coronary arteries? A. Yes. Q. And that is a very common cause of angina pectoris? A. Yes, sir. Q. How many other causes are there? A. Heredity, chronic alcoholism, syphilis. Q. All of those causes can produce embolism which can produce angina pectoris? A. They are the etiological factors and any exertion will produce the angina pectoris. Q. When and under what conditions? A. Under any condition;

the heart is affected and weakened and is not normal and any exertion, sudden exertion affecting his arterial system can produce the angina. Q. There is a pre-existing condition? A. Yes, sir. Q. And any unusual exertion or sudden exertion will produce angina pectoris under such conditions? A. Not necessarily unusual exertion."

The theory upon which the referee, board and court below, concluded this was a compensable death was that "exertion," put forth somewhere or somehow, was a "contributory factor," or, in the language of the board, the "exaggerating and exciting cause" of the angina pectoris. When the claim petition was filed the exertion therein alleged was a "heavy lift," evidently referring to the lowering of the trough, but at the hearing the exertion relied on was "walking up and down the steps."

This record, however, will be searched in vain for evidence of the happening of any undesigned, unforeseen, sudden or unexpected, occurrence, any mishap, untoward or fortuitous event, outside of the usual course of things—in short, for any evidence of an "accident," within the meaning of our compensation act. In the language of our Supreme Court in the recent case of Lacey v. Washburn and Williams Co., 309 Pa. 574, "the rule deducible from our decisions limits the right to recover compensation to cases where injury or death is due to some unexpected or fortuitous event." The cases on each side of the dividing line between compensable and noncompensable injuries and deaths are fully reviewed and analyzed in that opinion.

This case is not ruled by Watkins v. Pittsburgh Coal Co., 278 Pa. 463, cited and relied upon by claimant. In that case the body of the employe was found lying near the foot of a stairway with a cut on the forehead and a bruise on the cheek and all the circumstances tended to show the happening of an accident. But in

the case at bar there is not even a scintilla of evidence of any objective happening (Micale v. Light & S. W. Ins. Fund, 105 Pa. Superior Ct. 399) outside of the usual and normal course of events to be expected in the performance of decedent's ordinary daily work, nor is there any evidence from which the inference could be drawn that there was anything unusual about the exertion put forth by him in walking up the steps to get his tool box, or in removing the rung preparatory to lowering the trough. None of his activities that morning involved any extraordinary exertion or stress; they were merely the usual and ordinary work of a carpenter employed by a coal company. When he told his fellow workmen he was "sick," he did not attribute his illness to any unusual occurrence; his statement to the doctor was that he was suffering from indigestion. Moreover, neither the referee nor the board made any finding to the effect that there had been any unusual exertion upon the part of the employe.

Clearly, this case is ruled by the principles announced in Gausman v. Pearson Co., 284 Pa. 348; Diriscavage v. Penna. Coal Co., 96 Pa. Superior Ct. 189; Lacey v. Washburn and Williams Company, supra, and Waleski v. Susquehanna Collieries Co., 105 Pa. Superior Ct. 43. The mere fact that this employe was stricken while in the course of his employment, instead of at his home or on his way to work, raises no presumption in favor of the claimant. Before she is entitled to an award, the evidence submitted in her behalf must show, either directly or circumstantially, that her husband sustained an accident, within the meaning of the statute.

As this record is barren of any evidence even tending to show this essential fact, we must sustain the second and fourth assignments of error.

The judgment is reversed and here entered in favor of the defendant.