## Bartlinski *v.* Northumberland Mining Company, Appellant.

438

Before TREXLER, P. J., KELLER, CUNNING-
HAM, BALDRIGE, PARKER and JAMES, JJ.

*Wm. A. Skinner,* and with him *H. F. Reich,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY JAMES, J., March 13, 1935:

Claimant's petition for compensation for the death of her husband was disallowed by the referee but on appeal the compensation board substituted its own findings of fact and awarded compensation which later was affirmed by the court of common pleas.

Decedent at the time of his death, on January 11, 1933, was twenty-eight years of age. On August 20, 1932, in apparent good health, he went to his work as a miner. During the day, a loaded car jumped the track and decedent in company with two other men placed the car back on the tracks. In doing so, it was necessary to use a wooden lever or rail about ten or

eleven feet long; three times the lever was used. The decedent, with his co-fellow employees, got hold of the lever on the top and tried to lift the car, and on the third attempt was successful. A brother, Anthony, who worked with the decedent, testified as follows, to wit: "Q. What, if anything, happened to him that day at work? A. We loaded the car in the mines and it jumped the track and he went to try to put it on the track and he said, 'I can't do nothing I have pain in the back and everything is blue.' Q. How did he try? A. He got on the top and got hold of the rail with his hands, he hung on, three of us there. Q. Tried to put it on? A. Yes. Q. A heavy push? A. Yes. Q. How many times did he try to lift the car that way before he quit? A. That was the last time. ...... Q. How long were you trying to put the car back before he stopped work? A. Three times. ...... Q. Did you get the car back? A. Yes. Q. Did he stay until the car was put back? A. It was the last hitch. Q. Did he do any work after that? A. No, sir. Q. What if any complaint did he make right then and there? A. He said, 'Everything is blue in front of my eyes, I can just about walk.' Q. Complain he was hurt any place? A. In the back." Accompanied by a brother, who worked with him, decedent walked out of the mines, but repeatedly had to rest, taking an hour and a half to walk about two miles. Another brother testified that on August 22, 1932, he accompanied the decedent, who reported to the section foreman, and the foreman of the accident. Both foremen denied that they had been notified that an accident had occurred, but merely that decedent was sick or had a sore back. He tried to work several days but was unable to do so on account of weakness. Dr. V. J. Baluta testified that he treated decedent on September 6, for sciatica and a sprained back and treated him until his admission to the hospital on September 26,

1932. Decedent remained in the hospital for twenty-two days, and the hospital surgeon diagnosed his condition as sciatica and a sprained back. His tonsils were removed and he was also treated by a dentist. He returned to the hospital on November 9, and was discharged December 24, 1932, during which period he was operated on and an intra-abdominal tumor discovered, but whether cancerous or tuberculous, the doctors were unable to determine as no post-mortem was held. Dr. Baluta and Dr. Reese, the hospital surgeon, testified that the lifting of the car was a contributory factor in decedent's death.

The board found "as a fact that he suffered an accident on August 20, 1932, while retracking the mine car, in which he suffered a sprain of the back," and further found, "that the death of the decedent on January 11, 1933 was caused by an intra-abdominal tumor which had existed prior to August 20, 1932, but had not manifested itself and that this tumor was aggravated and the growth accelerated by the injury accidently sustained by decedent while working for defendant on August 20, 1932."

Appellant contends that, (1) the record does not show an accident in the course of the employment within the meaning of the Compensation Act, and (2) that assuming that an accident was proven, there was no competent medical testimony to show its connection with the death several months thereafter.

Although it may be assumed that it was a part of decedent's duty to assist in replacing the derailed car upon the tracks, we cannot assume that it was the usual work that decedent was engaged in. The derailing of the car although not uncommon, is in itself an unusual and unlooked for situation and the fact that with a lever ten or eleven feet in length the combined efforts of three men on three different "pushes," were required indicates in itself an unusual effort to

replace the derailed car and the immediate complaint by the decedent after the third push, "I can't do nothing, I have pain in the back and everything is blue," indicates that something unusual had happened to the decedent. Under the doctor's testimony, the decedent was suffering from a sprained back and the usual and ordinary definition of a sprain is something that had been occasioned by over strain as by a twist or a wrench. Under the rule laid down in Lacey v. Washburn & Williams Co., 309 Pa. 574, 577, 164 A. 724, to constitute an accident under our Compensation Act, the injury must be due to some unexpected or fortuitous event, and under the authority of Hamilton v. Penna. R. R., 298 Pa. 22, 147 A. 837, an injury resulting from a sprain while lifting a heavy weight is a fortuitous happening.

It has been uniformly held in a great number of cases, many of which are cited in Murphy v. P. & R. C. & I. Co., 98 Pa. Superior Ct. 108, that where the employee exerts more than the usual amount of energy and an injury results, an accident has occurred within the meaning of the Compensation Act. In the case of Kotkoskie v. N. W. Mining Co., 105 Pa. Superior Ct. 480, 161 A. 480, an award was sustained where extra effort was required in attempting to move a car that became wedged against the roof. The following authorities: O'Neill v. Lehigh C. & N. Co., 108 Pa. Superior Ct. 425, 165 A. 60; Mooney v. Yeagle, 107 Pa. Superior Ct. 409, 164 A. 82; Foster v. State College Bureau, 110 Pa. Superior Ct. 452, 168 A. 693; Kincel v. Feraco Const. Co., 113 Pa. Superior Ct. 61, 172 A. 11; McFadden v. Lehigh Navigation Coal Co., 111 Pa. Superior Ct. 501, 170 A. 314; Rocco v. Ellsworth Coll. Co., 111 Pa. Superior Ct. 508, 170 A. 316; Weissman v. Phila. Electric Co., 111 Pa. Superior Ct. 353, 170 A. 318; Pelusi v. Mandes & Sons, 109 Pa. Superior Ct. 439, 167 A. 456; Swiderski v. Glen Alden Coal Co., 114

Pa. Superior Ct. 21, 173 A. 865, which appellant relies upon, we do not believe to be controlling as an examination of them discloses that the work in which the employee was engaged was his usual employment, and no proof was established of extra effort or overexertion. From the testimony, we are satisfied that the board was warranted in finding that the deceased suffered an accident while retracking the mine car.

Dr. Baluta having testified in his examination in chief that the lift was a contributory factor in decedent's death, when asked on cross-examination, "In what way?" replied, that it aggravated the condition found in the abdomen at the time of the exploratory incision. He further testified that he did not know that the tumor existed before deceased lifted the car, but that it evidently was existent because when the exploratory examination was made the mass was found; further that the lifting of the car aggravated a condition that probably had been there before. Dr. Reese testified that the effort to put the car on the track was a marked contributory factor in causing death. Neither of the doctors was able to state how much the length of life had been shortened. From this testimony the board was fully warranted in finding that an existing tumor was aggravated by the accident, as it comes within the well established rule that, "If his demise was brought about by an injury accidentally suffered during the course of his employment, the fact that he had a chronic ailment which rendered him more susceptible to such injury than an ordinary person, would be, will not defeat the right to compensation": Jones v. United Iron & Metal Co., 99 Pa. Superior Ct. 394; Johnston v. Orcutt et al., 103 Pa. Superior Ct. 507, 157 A. 46; Dewees v. Day, 291 Pa. 379, 140 A. 345; Dopkin v. P. & R. C. & I. Co., 296 Pa. 71, 145 A. 707.

Appellant earnestly argues that in the absence of

any knowledge of the probable length of life of one afflicted with such a disease as decedent suffered from, the physicians were not competent to express an opinion as to the acceleration or aggravation of the disease. We find no authority for this contention. All that is necessary under the Workmen's Compensation Act, is that the testimony establish that the injury aggravate the condition and accelerate death, but no opinion or definite prophecy as to how much the death has been hastened or accelerated has yet been required.

Judgment affirmed.