Eberst *v.* Sears, Roebuck & Co., 'Appellant.

Argued October 27, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Leo A. Nunnink,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Julius J. Strba,* for appellee.

OPINION BY PARKER, J., December 16, 1938:

The employer in this workmen's compensation case appealed to a court of common pleas from an order of the Workmen's Compensation Board setting aside a final receipt and making an award for partial disability on account of an eye injury. The court below affirmed the action of the board and entered judgment for the amount of the award. The employer then appealed to this court, claiming that the petition came too late and that there was not sufficient evidence in the record to sustain a finding that there was a causal connection between an accident occurring in the course of his employment and the present disability. We are of the opinion that the court below reached a correct conclusion.

Willis C. Eberst on May 10, 1930, while in the course of his employment with the defendant, fell from a ladder a distance of 20 or 30 feet and as a result suffered concussion of the brain, contusion of the right arm, the right shoulder and the right side of the head. An open agreement for compensation was entered into between employer and employee approved by the board, and compensation for total disability was paid to him to June 2, 1930. A final receipt was signed June 6, 1930 and filed with the board on June 9, 1930. The claimant

returned to work for defendant and continued for several weeks.

On August 22, 1933 a petition was presented to the board to set aside the final receipt alleging fraud and mistake of fact and claiming that petitioner was suffering from an eye condition that had resulted from the accident. The case was referred successively to three referees, two of whom found against petitioner and one for him and each time the board sent back the record for further proceedings. On September 24, 1936 the record was returned for another hearing. That referee granted the petition to set aside the final receipt and made an award for partial disability on account of injuries to petitioner's eyes. The board affirmed the findings of fact by the referee and made an award holding that the receipt should be set aside on account of mistake of fact, that the present impairment of vision was due to the original accident, and that, in any event, the award could be sustained as a recurrence under §413 of the compensation act.

We will first examine the contention of the defendant that there was no causal connection shown between the present condition of claimant's eyes and the original accident for which compensation was paid for a short period. The referee, affirmed by the board, found that as a result of the injuries sustained on May 10, 1930, claimant "sustained an injury in the region of the third nucleus of the brain; that said injury involved certain eye muscles, and caused claimant to have double vision and blurred vision, as a result of said condition, claimant was partially disabled, and that said partial disability was reflected in a 60% loss in earning power, and that same continued from June 2, 1930, throughout the duration of the 300-week period."

It is not our province to balance the evidence, but we must determine whether there was any evidence to sustain the findings of the board and, if so, we are bound thereby: *Slemba v. Hamilton & Sons,* 290 **Pa.**

267, 138 A. 841. Dr. C. E. McKee, a specialist in treatment of the eye of thirty years' experience, called as an expert by claimant, stated, after reciting the history of the case and referring to two examinations of the claimant made by him, that the claimant had "some injury in the region of the third nucleus which controls the muscles largely of the left eye, and that now he suffers at times from failure of the left accommodative muscle, which produces blurring, causes confusion, sets up the reflex which causes headache, and that that condition, in my opinion, are symptoms brought about as a result of the injury that occurred in the region of the third nucleus of the nerve of the left eye, the motoroculi nerve." This was followed by a statement by the physician that in his opinion the blow which claimant received May 10, 1930 caused the injury to the region of the third nucleus and that these were the disabling features affecting the use of the eyes. He also stated that claimant was unable "to work at any work that requires close visual application" and that claimant would be disabled sixty or seventy per cent because he could not hold a job. There was other evidence bearing on the extent of the disability.

While there was much evidence produced by the defendant tending to show that the present disability was not due to the accident and such evidence would be very persuasive if we were a fact finding body, such is not the case. As the evidence of Dr. McKee, if accepted, would support the conclusion of the referee, we are bound thereby.

Some reference has been made by the appellant to the fact that it does not clearly appear just what vision the claimant had prior to the accident. Claimant testified that prior to the accident he did not have headaches of the character he experienced thereafter, that he had good eyesight before the accident and had no trouble with his eyes. While it is true that there was no evidence of an examination of the claimant's eyes

made by an eye specialist prior to the accident, the testimony was sufficient to warrant the expert, in answering a hypothetical question, to assume that claimant's eyesight was normal prior to the accident.

The remaining contention of appellant is that no sufficient ground has been shown by the proofs for setting aside the final receipt given June 6, 1930. We think this contention arises from a misconception of the law applicable to the case. The argument overlooks the fact that the present claim is for an eye injury. We have many times stated that it makes no material difference under which section a petition may have been filed provided proper grounds for action under either or both be proved: *Krock v. Ballard Sprague & Co.*, 104 Pa. Superior Ct. 389, 397, 159 A. 191; *Gardner v. Pressed Steel Car Co.*, 122 Pa. Superior Ct. 592, 598, 186 A. 410. Where an injured person, thinking he has fully recovered, makes a settlement with and releases the employer, it is proper, on development of future disability, to reopen the case and award compensation pursuant to the second paragraph of §413 of the Workmen's Compensation Law if the facts warrant it (*Dewees v. Day & Zimmerman*, 291 Pa. 379, 140 A. 345), provided a petition is filed within the limitations fixed in that section (77 PS §772). That paragraph provides that the board or a referee designated by the board "may, at any time, modify, reinstate, suspend, or terminate an original or supplemental agreement or an award, upon petition filed by either party with such board, upon proof that the disability of an injured employee has increased, decreased, recurred, or has temporarily or finally ceased, ...... Provided, That, except in the case of eye injuries, an agreement or an award can only be reviewed, modified, or reinstated during the time such agreement or award has to run, if for a definite period; and, except in the case of eye injuries, no agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the board

within one year after the date of the last payment of compensation, with or without an agreement." The limitation does not apply in case of eye injuries. See *Ancello v. Elk Tanning Co.*, 88 Pa. Superior Ct. 353.

It is apparent that this claimant, just as in the Dewees case, thought that when he was discharged from the hospital he was fully recovered and as a result he returned to work. It developed at once that his eyes were seriously affected although he had not lost the industrial use of both eyes. This being an eye injury, a petition for reinstatement or modification of the original agreement was in order notwithstanding the fact that three years had expired after the last payment of compensation. When the petition was filed by claimant in 1933, the period for which partial compensation would be payable had not expired.

We have no doubt that there was a recurrence and increase of disability here, although the recurrence followed immediately after the return to work. Such being the case, the receipt given the employer ceased to be a factor of any importance for the second paragraph of §413 authorized a re-examination under the facts here present notwithstanding the receipt given the employer.

Eberst testified that after the accident he had double vision and other disturbances of his eyesight but that it gradually cleared up. He returned to work and the trouble increased so that his vision would be entirely blurred and he could not see the wires with which he worked, for he was a radio repairman. This was followed by severe headaches and pain causing "writhing on the floor". The more he worked, the more frequent and severe the attacks became. This was a clear case of a recurrence and increase of disability, and the provisions of the second paragraph of §413 are applicable.

Judgment affirmed.